CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 25, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:25-cr-00013 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| GUILLERMO HERNANDEZ-OCAMPO | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Guillermo Hernandez-Ocampo stands accused of having been found in the United States without authorization, having previously been removed, in violation of 8 U.S.C. § 1326(a). (Dkt. No. 21.) He moves to dismiss the indictment by bringing a collateral attack on his prior removal under § 1326(d). (Dkt. No. 35.) His motion is fully briefed. (Dkt. Nos. 41, 44.) Because Hernandez-Ocampo does not establish that the deficiencies in his prior removal were fundamentally unfair, the court will deny his motion. 8 U.S.C. § 1326(d)(3).

## I. BACKGROUND

In February 2014, Hernandez-Ocampo, a twenty-three-year-old Mexican in search of work, walked through the desert from Sonora, Mexico, to Arizona, where Border Patrol found him a few yards north of the border about five days later. At the Douglas Border Patrol Station, an agent found him inadmissible under subsection 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), and ordered an expedited removal under INA subsection 235(b)(1)(A)(i), codified at 8 U.S.C. § 1225(b)(1)(A)(i). Hernandez-Ocampo departed the United States afoot from Calexico, California, the next day.

The parties urge differing inferences about the expedited removal from five of its paper records, so some description of the records is necessary.

First are the second and third of three Continuation Pages, Form I-831, dated February 17, 2014, for a Record of Deportable/Inadmissible Alien, Form I-213, which has not itself been supplied. (Dkt. No. 41-1.) The pages contain Hernandez-Ocampo's identifying information, the results of some record checks, and a description of his initial immigration processing, including statements that he admitted to entering the United States without authorization, that he declined to speak with a Mexican consular officer, that he did not fear persecution or torture, that he was being held pending expedited removal, and that "Form I-867 A/B was read and explained to the subject in the Spanish language and they stated they understood and were willing to answer questions at this time." The pages end with a statement that Hernandez-Ocampo participated in the Alien Transfer Exit Program as part of the Alliance to Combat Transnational Threats operation on February 18, 2014. Hernandez-Ocampo's handwritten initials appear on the first page, beside an inventory of his possession of 2,000 Mexican pesos. Both pages are signed by the Border Patrol agent.

Second is a Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, Form I-867A, and a Continuation Page, Form I-831, both dated February 18, 2014, which together constitute a two-page, English-language transcript of the agent's Spanish-language interview with Hernandez-Ocampo. (Dkt. No. 35-2.) This includes fifteen simple questions and answers establishing Hernandez-Ocampo's removability and, at the bottom of the second page, bears his handwritten initials and the agent's signature.

Third is a Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, Form I-867B, dated February 18, 2014, which contains a one-page transcript of four short questions and answers establishing that Hernandez-Ocampo did not fear persecution or

torture.  (Dkt. No. 35-3.)  The agent and a witness signed it.  A handwritten line for Hernandez-Ocampo's signature appears beside his typewritten name, but he did not sign it.

Fourth is a Notice and Order of Expedited Removal, Form I-860, dated February 18, 2014, which states, all on one page, the INA subsection 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), inadmissibility determination over the agent's signature, the INA subsection 235(b)(1), 8 U.S.C. § 1225(b)(1), removal order over the agent's and his supervisor's signatures, and a certificate of service on Hernandez-Ocampo, dated the same day, over the agent's signature.  (Dkt. No. 35-1.)  Apparently, the reverse side of the form is not available.

Last is a Notice to Alien Ordered Removed/Departure Verification, Form I-296.  (Dkt. No. 35-4.)  It is one page.  The top half, dated February 18, 2014, describes Hernandez-Ocampo's five-year admissibility bar, contains a warning of the § 1326 re-entry penalties, and bears the agent's signature.  The bottom half, dated February 19, 2014, includes the details of Hernandez-Ocampo's departure, the signature of the immigration enforcement agent who verified his departure, Hernandez-Ocampo's photograph, signature, and fingerprint, and the signature of the official who took the fingerprint.

Hernandez-Ocampo also swore out a declaration on the expedited removal to support the instant motion.  (Dkt. No. 35-5.)  He declares that he does not understand much English; he never provided false documents or information to obtain an immigration benefit; Border Patrol spoke to him as much in English as in Spanish; the agent did not explain that he was in any type of proceeding; he does not remember whether the agent read the charges against him; the agent explained that the papers he was signing would prevent him from returning to the United States for five years; he does not remember whether the agent read or told him to sign the reverse of Form I-860; he signed the papers so that he could be released quickly, fearing that otherwise he

would be locked up; he was not told that he had any choice but to sign the papers; he was not told that he could ask to withdraw his application for admission; if he had known that he could withdraw his application and return to Mexico on his own, he would have; and he had no prior criminal record.

In September 2019, five years after the expedited removal, Hernandez-Ocampo applied for some sort of visa.  (Dkt. No. 44-1.)  The record does not disclose the result of this application.

Finally, immigration officials learned that Hernandez-Ocampo had returned to the United States without authorization when he was arrested for driving under the influence of alcohol in Roanoke, Virginia, on April 6, 2024.  (Dkt. No. 1-1.)  He was shortly indicted for violating § 1326(a) and now moves to dismiss the indictment by challenging the validity of the 2014 expedited removal under § 1326(d).

## II.  LEGAL STANDARDS

Prior removal is an element of the unlawful re-entry felony at 8 U.S.C. § 1326(a).  A defendant may challenge the validity of his prior removal, *United States v. Mendoza-Lopez*, 481 U.S. 828, 838–39 (1987), only if he demonstrates that

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  Unlike a typical challenge to an indictment's sufficiency, a collateral attack on a prior removal obliges the court to consider the record and make factual findings.  *United States v. Fernandez Sanchez*, No. 3:18-cr-00022, 2019 WL 7041513, at *2 (W.D. Va. Dec. 20,

4

2019), *aff'd*, 46 F.4th 211 (4th Cir. 2022).[1]  The government only contests the third § 1326(d)

element here.  (Dkt. No. 41 at 7.)

"In order to establish fundamental unfairness, a defendant must show that (1) his due

process rights were violated by defects in his underlying deportation proceeding, and (2) he

suffered prejudice as a result of the defects."  *United States v. Wilson*, 316 F.3d 506, 510 (4th

Cir. 2003), *abrogated on other grounds by*, *Lopez v. Gonzales*, 549 U.S. 47 (2006).

Due process requires that a noncitizen facing removal be afforded "the opportunity to be

heard at a meaningful time and in a meaningful manner"; that is, that he be provided "(1) notice

of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a

fair opportunity to be heard."  *United States v. El Shami*, 434 F.3d 659, 664–65 (4th Cir. 2005)

(quoting *United States v. Torres*, 383 F.3d 92, 103–04 (3d Cir. 2004)).  Deviating from the INA

procedures that are necessary to ensure a full and fair hearing—for example, by failing to

provide a language interpreter—violates due process.  *Quintero v. Garland*, 998 F.3d 612, 623–

24 & n.11, 626–28 & n.13, 636 n.27 (4th Cir. 2021) (citing *Rusu v. INS*, 296 F.3d 316, 321 n.7

(4th Cir. 2002)); *United States v. Lopez-Collazo*, 824 F.3d 453, 461–62 (4th Cir. 2016).  But

some INA duties are not of a constitutional dimension, and a noncitizen "has no constitutional

right to be advised of his eligibility for discretionary relief."  *United States v. Herrera-Pagoada*,

14 F.4th 311, 321–22 (4th Cir. 2021) (eligibility for voluntary departure); *accord United States v.*

*Castro-Aleman*, 141 F.4th 576, 581 (4th Cir. 2025) (ability to apply for asylum); *United States v.*

*Villarreal Silva*, 931 F.3d 330, 338 (4th Cir. 2019) (ability to request withdrawal of application

for admission).

---

[1]  The INA purports to strip the courts of jurisdiction to consider a § 1326(d) challenge to the validity of a
prior expedited removal, 8 U.S.C. § 1225(b)(1)(D), but this provision is unconstitutional, *United States v. Villarreal
Silva*, 931 F.3d 330, 335–37 (4th Cir. 2019).

The prejudice of fundamental unfairness under § 1326(d)(3) must be actual prejudice suffered "*as a result of the due process violations* in the removal proceedings." *Lopez-Collazo*, 824 F.3d at 462. "This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Id.* "However, that link need not be ironclad . . . ." *Fernandez Sanchez*, 46 F.4th at 220. The defendant need only "show that, but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665. "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Fernandez Sanchez*, 46 F.4th at 220 (quoting *United States v. Terrazas-Silas*, 811 F. App'x 845, 847 (4th Cir. 2020) (per curiam) (unpublished opinion)). A due process violation that itself hampers review of whether it was prejudicial—for example, by failing to develop the record of an immigration proceeding—may be presumed to have been prejudicial. *Quintero*, 998 F.3d at 642–43.

In 2014, with some exceptions, if an unadmitted noncitizen was encountered without valid documents within 100 miles of the border and had not been present in the United States continuously for the prior 14 days, an immigration officer was required to order his expedited removal from the United States without further hearing or review, unless the noncitizen intended to apply for asylum or feared persecution. 8 U.S.C. § 1225(b)(1)(A); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877 (filed Aug. 10, 2004); *see also* 8 U.S.C. § 1252(a)(2)(A), (e) (INA § 242(a)(2)(A), (e)) (limiting judicial review). Hernandez-Ocampo neither disputes that he was properly subject to expedited removal in 2014 nor asserts that he ever intended to apply for asylum or feared persecution.

6

Rather, Hernandez-Ocampo argues that his expedited removal did not comply with the

procedure promulgated at 8 C.F.R. § 235.3(b)(2)(i):

> In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien.  This shall be accomplished by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act.  The examining immigration officer shall read (or have read) to the alien all information contained on Form I-867A.  Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I-867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction.  The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

Finally, the INA deems a noncitizen who is present in the United States without having

been admitted to be an applicant for admission.  8 U.S.C. § 1225(a)(1).  Such a noncitizen "may,

in the discretion of the Attorney General and at any time, be permitted to withdraw the

application for admission and depart immediately from the United States." § 1225(a)(4); *see* 8

C.F.R. § 235.4 ("The alien's decision to withdraw his or her application for admission must be

made voluntarily, but nothing in this section shall be construed as to give an alien the right to

withdraw his or her application for admission.").  Hernandez-Ocampo urges that, had he known

he could seek this permission, he would have done so in 2014.

### III.  ANALYSIS

The parties dispute whether the procedural deviations from 8 C.F.R. § 235.3(b)(2)(i) at Hernandez-Ocampo's 2014 expedited removal were fundamentally unfair under 8 U.S.C. § 1326(d)(3).  The court is satisfied that it has jurisdiction, *see Villarreal Silva*, 931 F.3d at 335, and concludes that these deviations neither violated Hernandez-Ocampo's due process rights nor caused him actual prejudice, *see Wilson*, 316 F.3d at 510.

The expedited removal scheme, in and of itself, affords due process.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *Villarreal Silva*, 931 F.3d at 334–35; *cf. Lopez-Collazo*, 824 F.3d at 461 n.3 (discussing 8 U.S.C. § 1228 (INA § 238)).  Only deviations from the scheme that deprive a noncitizen of a meaningful hearing, including notice of the charges and a fair opportunity to be heard, offend due process.  *See Herrera-Pagoada*, 14 F.4th at 321; *El Shami*, 434 F.3d at 664.  In particular, due process does not require that a noncitizen be informed of his eligibility for discretionary relief.  *See Herrera-Pagoada*, 14 F.4th at 321–22; *Villarreal Silva*, 931 F.3d at 338.

Hernandez-Ocampo contends that he never received notice of his removability, a hearing, or an opportunity to be heard.  The English-language forms he initialed were not explained to him in Spanish, he says, so he never understood himself to be in any sort of proceeding.  By his telling, he thought he was merely told to leave the United States and not return for five years.  To support this characterization, he points to Forms I-867A and I-867B, which were meant to constitute the record of his sworn interview, and to Form I-860, which should have given him notice of his determination of inadmissibility and order of removal.  By his reading, 8 C.F.R. § 235.3(b)(2)(i) required Hernandez-Ocampo to sign and initial each page of Forms I-867A and I-867B and to sign the reverse of Form I-860, but he only initialed the continuation page of Form

8

I-867A, and the reverse of Form I-860 is unavailable.  (Dkt. Nos. 35-1, 35-2, 35-3.)

Hernandez-Ocampo also relies on his declaration that the Border Patrol agent spoke to him as

much in English as in Spanish and did not explain that he was in a formal proceeding, give him

any choice but to sign the forms, tell him that he could ask to withdraw his application for

admission, or, so far as Hernandez-Ocampo recalls, read the charges against him or read or tell

him to sign the reverse of Form I-860.  (Dkt. No. 35-5.)  Hernandez-Ocampo concedes that he

had no due process right to be told that he could ask to withdraw his application.  (Dkt. No. 44 at

9.)  Nevertheless, he claims that he never knew he was subject to anything like a formal removal

and, relatedly, that the agent failed to develop a record to show otherwise, all in violation of due

process.  (Dkt. No. 35 at 3–5; Dkt. No. 44 at 6–10.)

For present purposes, the court assumes that Hernandez-Ocampo never signed the reverse

of Form I-860 and that 8 C.F.R. § 235.3(b)(2)(i) required Hernandez-Ocampo to sign and initial

each page of Forms I-867A and I-867B.

Even so, the deficiencies that Hernandez-Ocampo identifies did not offend due process.

The properly signed and dated certificate of service on Form I-860 satisfies the court that

Hernandez-Ocampo received notice of his inadmissibility determination and removal order, both

of which were facially proper.  (Dkt. No. 35-1 ("I personally served the original of this notice

upon the above-named person on 2/18/24.").)  Similarly, Hernandez-Ocampo initialed, and the

Border Patrol agent signed, the bottom of the two-page Form I-867A transcript of

Hernandez-Ocampo's sworn interview.  (Dkt. No. 35-2.)  Hernandez-Ocampo affirmed that he

understood his "rights, and the purpose and consequences of this interview," provided the

individualized factual basis of his own inadmissibility and removability, and stated that he had

nothing further to say at the end of the interview.  This was all the notice and hearing that due

process guaranteed a noncitizen facing expedited removal and not claiming asylum, and, in the context of this record, an additional two signatures and one set of initials are unnecessary to permit the court to tell that Hernandez-Ocampo received it. *See Villarreal Silva*, 931 F.3d at 334–35. Hernandez-Ocampo does not suggest that the transcript itself was inaccurate, and the witness's and supervisor's signatures on the closely related Forms I-867B and I-860 instill confidence that this was not a rogue operation. (Dkt. Nos. 35-3, 35-31.) Nor does he claim any irregularity on Form I-867B beyond his missing signature, and, in any case, this form was redundant to his fear-or-concern response on the Form I-867A continuation page. (Dkt. No. 35-3.) The court concludes that the paperwork deviations from 8 C.F.R. § 235.3(b)(2)(i) at Hernandez-Ocampo's removal did not violate his right to due process. *See Herrera-Pagoada*, 14 F.4th at 321.

The Eastern District of Virginia has considered similar defects on Form I-860 and reached the same conclusion. *See United States v. Sanchez-Lopez*, 414 F. Supp. 3d 842, 845–46 (E.D. Va. 2019). Hernandez-Ocampo cites three cases from district courts in the Ninth Circuit that reached squarely opposite results. *United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 998–99 (D. Or. 2019); *United States v. Arizmendi-Depaz*, No. 18-cr-04949, 2019 WL 3945459, at *3–4 (S.D. Cal. Aug. 21, 2019); *United States v. Vieira-Ferel*, No. 3:17-cr-00427, 2019 WL 3558169, at *3 (D. Or. Aug. 5, 2019). These decisions relied prominently on *United States v. Raya-Vaca*, 771 F.3d 1195, 1204–05 (9th Cir. 2014), which the Supreme Court has since abrogated, *Thuraissigiam*, 591 U.S. 103, albeit on slightly distinguishable grounds. In any event, the Ninth Circuit is generally an "outlier" in this realm, and these cases are so out of step with the Fourth Circuit's approach that this court cannot accord them persuasive weight. *Herrera-Pagoada*, 14 F.4th at 320–21 ("But in our circuit, '[a]n agency's violation of its

regulations is not unconstitutional unless the regulations are necessary to afford due process.'"

(quoting *Bowens v. N.C. Dep't of Hum. Res.*, 710 F.2d 1015, 1019 (4th Cir. 1983)) (alteration in

original)).

The court also cannot accept Hernandez-Ocampo's broader contentions about the

unfairness of his removal.  He claims not to have understood the language of the Border Patrol

agents and the forms he signed, but he does not assert that he was denied interpretive assistance

or an opportunity to seek clarification before signing the forms.  He states that he was given no

choice but to sign them but, in the same breath, says that he chose to sign them in order to be

released more quickly; our system routinely tolerates such choices.  And he cites a study on

systemic flaws in expedited removal proceedings, but the court must confine its consideration to

the evidence of his particular removal.  *See* U.S. Comm'n on Int'l Religious Freedom, *Report on

Asylum Seekers in Expedited Removal* (2005).  Finally, the court cannot credit

Hernandez-Ocampo's general claim that he did not appreciate the formality of his expedited

removal.  He was detained for two nights, gave a sworn statement before a witness at a Border

Patrol station, had his charges and their admissibility consequences explained to him verbally

and on paper, gave his photograph, fingerprint, and signature below a notice of his five-year

admissibility bar, and was transported to a different state to depart the country under the eye of

an immigration enforcement agent.  Some of this must have impressed on him the seriousness of

the proceeding unfolding around him.  There was no surprise or entrapment here.

The court does not doubt that Hernandez-Ocampo's 2014 expedited removal was

unpleasant, confusing, and fast.  But it afforded him a meaningful hearing, so it complied with

due process.  *See El Shami*, 434 F.3d at 664.

And the regulatory defects in Hernandez-Ocampo's removal did not cause him actual prejudice. *See Lopez-Collazo*, 824 F.3d at 462. He must link the prejudice he claims to have suffered to the specific defects by undermining confidence that he would have been removed even without the defects. *See Fernandez Sanchez*, 46 F.4th at 220; *El Shami*, 434 F.3d at 665.

But the prejudice he asserts was his not asking, or his not knowing to ask, to withdraw his application for admission. *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. He declares that he did not know of this possibility (Dkt. No. 35-5 at ¶¶ 12–14) and properly concedes that he had no right to be advised of it (Dkt. No. 44 at 9); *see Herrera-Pagoada*, 14 F.4th at 321–22. Yet, he urges that the defects he asserts cumulatively gave him the false impression that he was not in a formal proceeding and led him to not explore how to avoid its consequences; had he been fairly put on his guard, he says, there is a reasonable probability that he would have asked about and been granted permission to withdraw his application for admission. He cites a bevy of materials to show that he was a good candidate for permission, and the court assumes that he was. (Dkt. No. 35 at 5–6; Dkt. No. 44 at 9–11.) But the court has already rejected his informal characterization of his removal, and the link between this asserted deficiency and his failure to seek withdrawal is too tenuous. The forms that Hernandez-Ocampo did not initial and sign made no mention of withdrawal, and the proposition that more interpretive assistance or trappings of formality would have prompted him to inquire about it is speculative. *See Sanchez-Lopez*, 414 F. Supp. 3d at 846 ("Nothing in Form I-860 refers to the possibility of discretionary relief from removal, or an alien's ability to request it."). The Fourth Circuit has rejected a similar argument. *Villarreal Silva*, 931 F.3d at 338 ("[The defendant] presented *nothing* to establish that he would have requested a § 1225(a)(4) withdrawal [but for the asserted due process violation]. Indeed, the district court observed that Villarreal submitted no evidence, *or even argument*, that he knew

12

of his ability to request withdrawal of his application, and there was no requirement that he be so advised."). The asserted deficiencies were not of the sort to hamper review of whether they were themselves prejudicial, so the court may not presume them to have been prejudicial. *See Quintero*, 998 F.3d at 642–43. Hernandez-Ocampo fails to show that the violations he asserts caused him the prejudice he claims. *See Lopez-Collazo*, 824 F.3d at 462.

From the speculative to the specious, Hernandez-Ocampo also offers a theory that his removal was so casual that he either did not realize it was a removal at all or understood the Border Patrol agent to invite him back to the United States *without an inspection* five years later. (Dkt. No. 44 at 6–11.) Under this theory, his detrimental reliance on his impression that he had not been formally removed or on the agent's invitation to come back and build a life here prejudiced Hernandez-Ocampo. But, again, the court cannot believe that he was really so misled, and his subsequent visa application demonstrated his understanding that he could not return without a valid entry document. (Dkt. No. 44-1.) Hernandez-Ocampo is welcome to test the government's § 1326(a)(1) proof at trial, but his § 1326(d) attack fails, and his motion to dismiss the indictment will be denied.

## IV. CONCLUSION AND ORDER

The regulatory defects in Hernandez-Ocampo's prior expedited removal did not violate his due process rights or cause him to suffer actual prejudice, so his removal was not fundamentally unfair. Thus, it is hereby ORDERED that his motion to dismiss the indictment (Dkt. No. 35) is DENIED. The clerk is directed to transmit this opinion and order to all counsel.

Entered: June 25, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

13